**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROSSIDOC LLC, d/b/a The Irish Nobleman, an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | No. 23 C 13410 |
| v. | ) ) | Judge Sara L. Ellis |
| THE CITY OF CHICAGO, a municipal corporation, and DANIEL LA SPATA, an individual, | ) ) ) ) | |
| Defendants. | ) ) | |

## OPINION AND ORDER

Defendant Daniel La Spata, the Alderman for the City of Chicago's 1st Ward, exercised his aldermanic prerogative to deny Plaintiff Rossidoc LLC's, d/b/a The Irish Nobleman ("The Irish Nobleman"), application for an extended outdoor dining area in 2023. The Irish Nobleman contends that La Spata did so because of its criticisms of him and its support for his political opponents. After La Spata denied the permit, The Irish Nobleman filed this lawsuit against him and Defendant City of Chicago. After the filing of the lawsuit, The Irish Nobleman again applied for but did not receive a permit for an extended outdoor dining area in 2024 or 2025. In its second amended complaint, The Irish Nobleman claims that Defendants violated its equal protection and due process rights under the Fourteenth Amendment with respect to its 2024 and 2025 permit applications and retaliated against it in violation of its First Amendment rights with respect to its applications in 2023, 2024, and 2025. Defendants filed a partial motion to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Court should dismiss The Irish Nobleman's equal protection and due process claims as they relate to the 2024 and 2025 extended outdoor dining permit applications. Because The Irish

Nobleman has not pleaded itself out of court with respect to its equal protection claim related to the 2024 and 2025 applications, the Court allows that claim to proceed. But because The Irish Nobleman again has not identified a protected property interest, it cannot proceed on its due process claim.

**BACKGROUND**[1]

## I.      Aldermanic Prerogative

In the City of Chicago, aldermanic prerogative refers to an alderperson's ability to initiate or block City Council or other government action concerning their own ward. The prerogative is unwritten, exercised at the alderperson's discretion. In the context of a 2019-2023 U.S. Department of Housing and Urban Development ("HUD") investigation into affordable housing practices in the City, alderpersons defended the prerogative as being "necessary to ensure that local concerns are considered in development decisions." Doc. 65 ¶ 18. HUD's investigation, however, indicated that the "Council routinely shows unquestioning deference to local aldermen even in the absence of any articulated local concern, and even where concerns are clearly invoked as pretext to block integrative affordable housing." *Id.* Former City Mayor Lori Lightfoot attempted to end the prerogative, noting that the practice "breeds corruption" and was not "in the city's interest." *Id.* ¶ 11. But only once during Mayor Lightfoot's tenure did the City Council vote to defy the prerogative.

## II.      The City's Expanded Outdoor Dining Program

In response to the COVID-19 pandemic's limitations on indoor dining, in the summer of 2020, the City launched a pilot expanded outdoor dining ("EOD") program, which initially closed six streets off to traffic around the City, allowing local restaurants to expand their

---

[1] The Court takes the facts in the background section from the second amended complaint and the exhibit attached thereto and presumes them to be true for the purpose of resolving Defendants' motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013).

operations by offering socially distanced outdoor seating options.  In 2021, the City extended the

EOD program and, in 2023, made it a permanent feature.  Restaurants and bars interested in

obtaining an EOD permit must apply annually.  An applicant submits the application to the

Commissioner of Transportation, after which the Commissioner reviews the application for

compliance with the EOD ordinance rules.  The EOD ordinance provides the following

procedure if the Commissioner concludes that the application is complete:

> [T]he Commissioner shall provide the application to the alderman
> of the affected ward.  The alderman shall provide a
> recommendation to the Commissioner regarding the application
> within 30 days of receiving it, unless, the Commissioner
> determines that good cause exists for a reasonable extension, not to
> exceed 30 days.  The recommendation regarding the application
> shall be based upon the alderman's analysis of the requirements of
> this article and the rules promulgated in furtherance of the article.
> Such recommendation shall not be unreasonably withheld.  The
> Commissioner shall issue the Outdoor Dining Street Permit to the
> applicant if the Commissioner finds that the applicant meets the
> applicable requirements and the alderman's recommendation is
> that the permit application should be approved.  If the
> Commissioner finds that the applicant meets the applicable
> requirements, but the alderman recommends that the permit
> application should be denied, the applicant, with the assistance of
> the Department of Transportation ["CDOT"], may submit for City
> Council consideration an applicant-sponsored ordinance granting
> approval of an Outdoor Dining Street Permit.

MCC § 10-28-593(b).  The EOD ordinance further provides:

> Upon denial by the Commissioner of a permit application made
> under this section, the Commissioner shall notify the applicant, in
> writing, of such fact and of the basis for the denial.  If no appeal is
> filed within 10 calendar days of the date of notice of the
> Commissioner's decision, that decision shall be deemed final.
> Within 10 days after such notice is mailed, the applicant may make
> a written request to the Commissioner for a hearing on the
> disapproved application.  Within 10 days after such written request
> for a hearing is made, a public hearing shall be authorized before a
> hearing officer appointed by the Commissioner of Business Affairs
> and Consumer Protection.  Such public hearing shall be
> commenced within 30 days after such hearing is authorized.
> Within 14 days after completion of such hearing, the hearing

3

officer shall report the hearing officer's findings to the
Commissioner of Business Affairs and Consumer Protection. If
the Commissioner of Business Affairs and Consumer Protection
determines after such hearing that the application should be denied,
the Commissioner of Business Affairs and Consumer Protection
shall, within 60 days after such hearing has been concluded, state
the reasons for the Commissioner's determination in a written
finding and shall serve a copy of such written finding upon the
applicant. The Commissioner's determination shall be final and
may be appealed in the manner provided by law.

MCC § 10-28-593(c)(2).

### III. The Irish Nobleman's Business

The Irish Nobleman operates a bar and restaurant of the same name at 1367 W. Erie
Street, located in the City's 1st Ward, which La Spata represents. The Irish Nobleman's
principal lives in the 1st Ward.

The Irish Nobleman has a retail food establishment license and a tavern license, which
allow it to serve food and alcohol on its premises. In addition to its interior space, the Irish
Nobleman has a patio and sidewalk café. The City's requirements for a sidewalk café permit
include that the café be located only on the sidewalk, have a boundary fully enclosing the
permitted area that separates it from the remainder of the public way, and have a six-foot
clearance for pedestrians along the sidewalk. The Irish Nobleman obtained a sidewalk café
permit in 2020 and has operated the sidewalk café in compliance with City requirements and
without any violations or infractions.

The COVID-19 pandemic significantly hindered The Irish Nobleman's business
operations. To maintain its business during the initial closures, it converted its dining room into
a walk-up ice cream and concession stand window. This, however, angered La Spata, who came
into The Irish Nobleman in the summer of 2020 asking staff something along the lines of "who
said you could open an ice cream shop in my ward?" *Id.* ¶ 30. Despite The Irish Nobleman's

4

principal informing La Spata that its retail food establishment license covered and allowed for the sale of ice cream, La Spata continued to ask how The Irish Nobleman sold ice cream and who allowed it. This turned out to be The Irish Nobleman's first, but not last, encounter with La Spata.

In addition to having to adapt to the COVID-19 pandemic, The Irish Nobleman saw increased crime in its surrounding area over the summer of 2020. In response, The Irish Nobleman's principal reached out to La Spata's ward office to inquire about placing speed bumps around the bar because drag racing had become prevalent on the surrounding streets. At the suggestion of La Spata's office, The Irish Nobleman began gathering signatures to support such an initiative, ultimately presenting La Spata with a petition with roughly 1,000 signatures. But La Spata refused to accept the petition because it was "not on [his] letterhead forms." *Id.* ¶ 47 (alteration in original). The Irish Nobleman's principal also made claims on social media about the high level of crime in the neighborhood during La Spata's brief tenure. An October 2020 Block Club Chicago article quoted The Irish Nobleman's representatives about crime in the neighborhood, the need for speed bumps, and their desire to see the City address their safety complaints.

Following these criticisms, La Spata's office began contacting The Irish Nobleman's principal almost weekly, complaining that The Irish Nobleman's customers were excessively loud during televised sporting events and that its neighbors had complained and were "irate." *Id.* ¶ 50. The Irish Nobleman's principal agreed to meet with the neighbors, but La Spata's office did not provide their identities or coordinate a meeting, leading The Irish Nobleman to believe that La Spata fabricated the complaints to silence its principal about the increased crime in the area.

In addition, The Irish Nobleman found itself the subject of increased inspections, with one City inspector remarking that he had "never seen so many inspections on a single restaurant in such a short period of time." *Id.* ¶ 54. Multiple inspectors indicated that they conducted the inspections at La Spata's office's behest. In the summer of 2021, over twenty-seven unscheduled inspections took place at The Irish Nobleman. These inspections often caused The Irish Nobleman's operations to come to a halt until the inspections concluded.

## IV.   The Irish Nobleman's Principal's Support for La Spata's Political Opponents

In addition to his outspokenness about crime in the 1st Ward, The Irish Nobleman's principal publicly supported La Spata's political opponents. Beginning in 2022, The Irish Nobleman's principal openly supported two candidates running against La Spata in the City's February 1, 2023 election by hosting fundraisers at The Irish Nobleman and allowing opposing candidates to leave campaign signs there. The Irish Nobleman's principal informed La Spata of his support for the other candidates at some point in 2022 but also offered La Spata the opportunity to post signs and hold fundraisers at The Irish Nobleman.

In July or August 2022, The Irish Nobleman announced on social media and in community groups and forums to which La Spata belonged that it would host a fundraiser for one of La Spata's opponents. Approximately thirty minutes after the announcement, La Spata came to The Irish Nobleman demanding the removal of the sidewalk café, claiming the bar did not have a valid permit for it. La Spata refused to acknowledge the valid café permit posted at the bar's entrance. The Irish Nobleman went on to host approximately six events for alternate aldermanic candidates, posting about them on social media.

After The Irish Nobleman hosted some of these fundraisers, the City ordered it to remove certain inflatable decorations it had put up outside the bar in December 2022. The Irish

Nobleman's principal told reporters that he believed that La Spata tipped off inspectors about the decorations for political reasons, in retaliation for The Irish Nobleman holding fundraisers for La Spata's opponents. On May 17, 2023, The Irish Nobleman's representative provided an interview to Fox News in which he stated that the City told businesses to "police themselves," that doing business with the City "makes [him] want to leave," and that the City threatened to fine The Irish Nobleman $1,000 per day if it operated its patio. *Id.* ¶ 144.

## V.     The Irish Nobleman's EOD Applications

The Irish Nobleman obtained an EOD permit for the 2020, 2021, and 2022 outdoor dining seasons. The Irish Nobleman used the curb lane and diagonal parking area in front of its property to operate the patio. Its EOD permit allowed for forty to fifty outdoor seats, depending on the COVID-19 restrictions in place at the time. In 2021, in exchange for the EOD permit, La Spata required The Irish Nobleman to remove its sidewalk café. He did not require other bars and restaurants in the 1st Ward to choose between one or the other, however. In 2022, La Spata initially denied The Irish Nobleman's EOD permit, indicating that it had to reduce the total number of tables to four, another demand that he did not impose on other bars or restaurants in the 1st Ward. The Irish Nobleman then worked directly with the City's Business Affairs and Consumer Protection Department to resume its sidewalk café operations given the EOD permit's capacity reduction.

On June 1, 2023, The Irish Nobleman applied for a 2023 EOD permit, which the Commissioner accepted. The Irish Nobleman's EOD application and seating plans were similar, if not identical, to the prior years' applications. In light of the prior two years' experiences, The Irish Nobleman's principal preemptively reached out to La Spata's office to address any changes to the application that La Spata might request. On June 7, 2023, La Spata's office demanded that

the Irish Nobleman immediately remove its sidewalk café due to the alleged lack of a permit. The Irish Nobleman had posted its valid café permit at the entrance to the bar, a fact that The Irish Nobleman's principal brought to La Spata's office's attention. The office responded that it could not locate the sidewalk café permit on the City portal. La Spata then continued to insist that in order for The Irish Nobleman to obtain an EOD permit for 2023, it would have to abandon its sidewalk café and reduce the total amount of outdoor seating, citing a non-existent citation concerning the sidewalk café permit.

In July 2023, an after-hours shooting occurred just outside of The Irish Nobleman that did not involve any of The Irish Nobleman's representatives or patrons. On July 13, 2023, La Spata held a meeting with neighborhood residents and business owners ostensibly to discuss crime in the area. At the meeting, La Spata acknowledged that The Irish Nobleman had a valid sidewalk café permit but indicated he was denying its EOD application because The Irish Nobleman had two extra tables and four extra chairs on the sidewalk. He also stated that even if he wanted to approve the EOD permit, the permit system would not let him do so. La Spata did not address neighborhood safety issues at the meeting. The Irish Nobleman's representatives and community members expressed their disagreement with La Spata's decision to deny The Irish Nobleman's EOD application, contending that an increased patio presence deterred crime and that the patio allowed staff to earn increased wages to make up for slower months. La Spata indicated he would reevaluate The Irish Nobleman's application in thirty to sixty days, with the delay reducing the possibility that The Irish Nobleman could take advantage of the 2023 EOD season. La Spata never issued a formal denial or recommendation on The Irish Nobleman's 2023 EOD application.

On July 17, 2023, The Irish Nobleman's representative contacted La Spata's office seeking further information about the permit denial, highlighting that the bar had complied with occupancy requirements at all times. La Spata's office responded two days later, stating that "[s]ince your business threatened to sue the City at our last meeting, we have no follow-up comment." *Id.* ¶ 127. The email also included a copy of the outdoor dining ordinance and instructed The Irish Nobleman to direct any further questions to the City's Law Department.

Following the EOD ordinance's direction, on July 26, 2023, The Irish Nobleman requested CDOT's assistance in seeking approval from the City Council of the EOD permit, following up again with CDOT on August 3, 2023. CDOT did not respond or otherwise assist The Irish Nobleman in filing an applicant-sponsored ordinance. Because it did not receive an EOD permit in 2023, The Irish Nobleman had less outdoor seating in 2023 than it had before the COVID-19 pandemic. The Irish Nobleman was the only business in the 1st Ward that had an EOD permit or renewal application denied by La Spata that year.

In 2024 and 2025, The Irish Nobleman again submitted applications for an EOD permit. La Spata again refused to act on these applications. The Irish Nobleman's representative reached out to CDOT regarding the applications, but CDOT did not respond to the correspondence or otherwise assist The Irish Nobleman in submitting an applicant-sponsored ordinance. By refusing to provide a recommendation on the applications, La Spata constructively denied the applications and ran out the clock on the months where The Irish Nobleman could use the outdoor space. La Spata never provided a written denial or a reason for the denial, leaving The Irish Nobleman unaware of the basis for the decision.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.  Equal Protection Claim

Defendants first argue that, just as the Court found with respect to The Irish Nobleman's equal protection claim concerning its 2023 EOD application, a conceivable rational basis exists for the denial of The Irish Nobleman's 2024 and 2025 EOD applications, meaning that The Irish Nobleman cannot proceed on its equal protection class-of-one claim with respect to these applications. The Irish Nobleman responds that its second amended complaint does not reveal a potential rational basis for the denial of the 2024 and 2025 EOD applications, notwithstanding the Court's conclusion that its first amended complaint included such a basis for the 2023 EOD application.

10

To adequately plead a class-of-one equal protection claim, The Irish Nobleman must "allege facts plausibly suggesting that [it] was 'intentionally treated differently from others similarly situated' and 'there is no rational basis for the difference in treatment.'"[2] *Van Dyke v. Vill. of Alsip*, 819 F. App'x 431, 432 (7th Cir. 2020) (citation omitted). The Irish Nobleman's claim cannot survive merely by alleging that La Spata acted vindictively and with an improper motive. *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015). At the pleading stage, "[a]ll it takes to defeat [a class-of-one] claim is a *conceivable* rational basis for the difference in treatment," and plaintiffs may "plead themselves out of court if their complaint reveals a potential rational basis for the actions." *Id.* at 1121 (alterations in original) (citation omitted).

The Irish Nobleman alleges that its EOD patio had used the curb lane and diagonal parking area in front of its property. It also alleges that, before 2023, La Spata had raised concerns about noise and congestion in the neighborhood surrounding The Irish Nobleman and had stated that he denied the 2023 EOD application because The Irish Nobleman's café had extra tables and chairs. In line with these concerns, The Irish Nobleman acknowledges that La Spata required revisions to prior permit applications to reduce the total amount of outdoor seating. In considering the equal protection claim with respect to the 2023 EOD application, then, the Court concluded that the first amended complaint revealed a potential rational basis for La Spata's refusal to approve The Irish Nobleman's 2023 EOD application, namely concerns with noise and congestion arising from the increased outdoor dining presence. Doc. 32 at 18–19; Doc. 45 at 2–

---

[2] The Seventh Circuit has left unsettled whether a plaintiff also must plead "animus, malice, or some other improper motivation" to sufficiently allege a class-of-one equal protection claim. *Frederickson v. Landeros*, 943 F.3d 1054, 1061 (7th Cir. 2019) ("[W]e have not definitively resolved the question whether it is sufficient for a plaintiff simply to allege differential treatment at the hands of the police with no rational basis, or if a class-of-one claim requires a plaintiff *additionally* to prove that the police acted for reasons of personal animus, malice, or some other improper personal motivation."). The Court need not resolve this question in deciding the sufficiency of The Irish Nobleman's claim given that Defendants only challenge whether The Irish Nobleman has pleaded that no rational basis exists for the alleged difference in treatment.

11

3; *see Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 1001 (7th Cir. 2006) (noting that restaurant patios "raise unique concerns such as traffic control [and] noise pollution," which could justify differential treatment); *Cohen v. City of Des Plaines*, 8 F.3d 484, 494 (7th Cir. 1993) ("A city may use zoning regulations as an exercise of the police power to protect residents from the ill effects of urbanization, such as crowding, encroachment of commercial businesses or industries, traffic congestion, and noise.").

The second amended complaint includes the same allegations related to pre-2023 concerns with noise and congestion arising from an increased outdoor dining presence. But it does not include any specific allegations related to the 2024 and 2025 EOD applications or concerns that Defendants might have had at the time related to The Irish Nobleman's request for additional outdoor seating. While Defendants argue that the same noise and congestion concerns could have carried over to the 2024 and 2025 EOD applications, the Court finds it a stretch at the motion to dismiss stage to conclude that The Irish Nobleman has pleaded itself out of court on such grounds. The Irish Nobleman pleads that La Spata never provided a basis for the denial of the 2024 and 2025 applications and that it does not know why La Spata did not act on the applications. Although Defendants may develop evidence in discovery that provides conceivable rational bases for the denial so as to defeat The Irish Nobleman's class-of-one equal protection claim with respect to the 2024 and 2025 EOD applications, at this stage, the Court does not find it appropriate to entertain such speculation. *See Mary Jane Sweet Spot, LLC v. City of Blue Island*, No. 1:22-cv-06273, 2024 WL 1363635, at *10 (N.D. Ill. Mar. 29, 2024) (allowing portion of class-of-one equal protection claim to proceed where the complaint did not reveal a rational basis for the allegedly discriminatory treatment); *cf. Ind. Land Tr. #3082 v. Hammond Redevelopment Commission*, 107 F.4th 693, 698 (7th Cir. 2024) (affirming dismissal of class-of-

12

one equal protection claim where the court did not need to "hypothesiz[e]" a rational basis because the plaintiffs "supplied it themselves," pleading themselves out of court).  The Court therefore will allow The Irish Nobleman to proceed with its equal protection claim as it relates to its 2024 and 2025 EOD applications.

## II.  Due Process

The Irish Nobleman's attempt at avoiding the Court's prior conclusion with respect to its due process claim by repleading it with respect to its 2024 and 2025 EOD applications fails, however.  "[T]he threshold question in any due process challenge is whether a protected property or liberty interest exists."  *Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013); *Haney v. Winnebago Cnty. Bd.*, No. 3:19-cv-50191, 2020 WL 1288881, at *6 (N.D. Ill. Mar. 18, 2020) ("Both substantive and procedural due process claims require a plaintiff to identify a constitutionally protected right to property or liberty.").  "A protected property interest is a legitimate claim of entitlement—not defined by the Constitution—but 'by existing rules or understandings that stem from an independent source such as state law.'"  *Proctor v. McNeil*, 14 F. Supp. 3d 1108, 1112 (N.D. Ill. 2014) (citation omitted).  A protected liberty interest includes "bodily integrity, the right to marry, marital privacy, and the right to have children."  *Id.*

The Court previously dismissed The Irish Nobleman's due process claim based on the 2023 EOD application because The Irish Nobleman had not shown that it had a constitutionally protected property interest in an EOD permit.  Doc. 32 at 22–23; Doc. 25 at 3.  The Irish Nobleman accepts that this "may be true in a case where an actual denial was issued," but it nonetheless argues that it still has "a protected interest in being afforded the defined and *required* statutory process for consideration of its EOD Application."  Doc. 71 at 7.  Because The Irish Nobleman alleges that it never received the required process with respect to its 2024 and 2025

13

EOD applications, it contends that it has a cognizable due process claim. The Court, however, has already rejected this argument in addressing The Irish Nobleman's request for leave to amend its due process claim with respect to the 2023 EOD application. *See* Doc. 45 at 3–4. As previously stated, The Irish Nobleman does not have a protected property interest in Defendants following the City's EOD ordinance, meaning that Defendants' alleged violation of the ordinance's procedures for approval or denial of an EOD permit does not amount to a denial of due process. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012) ("The Supreme Court has emphasized that the federal Constitution's due process clause does not protect an interest in other process."); *Ferkel v. Bd. of Educ.*, 45 F. Supp. 3d 824, 832 (N.D. Ill. 2014) ("Plaintiffs cannot point to a set of procedures and argue that the procedures in and of themselves create a property interest. In other words, Plaintiffs can have no property interest in procedures; they can only have an interest in property." (citation omitted)).

The Court therefore dismisses The Irish Nobleman's due process claim as it relates to the 2024 and 2025 EOD applications. Because The Irish Nobleman has now had several chances to raise a viable due process claim and has failed to do so, the Court dismisses this claim with prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss [68]. The Court dismisses the due process claim with respect to the 2024 and 2025 EOD applications (Count V) with prejudice.


Dated: January 28, 2026

SARA L. ELLIS
United States District Judge